UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| ALMER JOSEPH ROBERTSON, ET AL. | CIVIL ACTION NO. 11-0049 |
| VERSUS | JUDGE ROBERT G. JAMES |
| TOWN OF FARMERVILLE, ET AL. | MAG. JUDGE KAREN L. HAYES |

RULING

Pending before the Court is Defendants Dewayne Jackson ("Jackson") and Town of Farmerville's ("Farmerville") Motion for Summary Judgment.  [Doc. No. 14].  Plaintiffs Almer Robertson ("Robertson") and Angel White ("White") filed an Opposition to Motion for Summary Judgment [Doc. No. 25], and Defendants filed a Reply to Opposition to Motion for Summary Judgment [Doc. No. 27].

For the following reasons, Defendants' motion is GRANTED IN PART and DENIED IN PART.

I.      BACKGROUND

The allegations in this case stem from a traffic stop conducted by Jackson, a former police officer with the Town of Farmerville, involving Robertson and White.  On January 1, 2010, at approximately 6:45 p.m., Robertson and White were traveling northbound on Main Street in Farmerville.  Robertson claims that Jackson "rapidly approached" him in his police car from the rear and continued to "drive extremely close" until he activated his emergency lights and Robertson pulled over.  [Doc. No. 2, p. 1].  The parties dispute whether Robertson crossed the center line once Jackson began following him.  Additionally, the parties dispute whether Robertson braked suddenly

to make Jackson collide with him or merely slowed down for the upcoming traffic light.

After pulling over, Robertson and Jackson both exited their vehicles.   According to Robertson, Jackson had previously stopped him on three separate occasions; therefore, Robertson requested that Jackson call another officer to conduct the stop.  Robertson claims that Jackson placed him in handcuffs, conducted a pat down search, shoved him until he fell to the ground, and eventually placed him in the back of his police car.  Jackson admits Robertson fell to the ground before being placed in his police car, but claims Robertson tripped.

While Jackson was arresting Robertson, White also exited the vehicle and began yelling at Jackson.  White claims she said Robertson "didn't do anything wrong" [Doc. No. 14-8, p. 3] and requested that Jackson "not hurt him." [Doc. No. 14-4, p. 3].  Officer Bobby Holly ("Holly") arrived on the scene around this time, handcuffed White, and placed her in his police car.

After White and Robertson were both in the police cars, Jackson and Holly informed them that they were under arrest and read them their Miranda rights.  Then, Jackson and Holly conducted a search of Robertson's vehicle.  According to Jackson, the officers located a .22 caliber pistol stuffed in the driver's seat, another pistol on the dash, an unlabeled bottle of pills in the glove compartment, and a similar bottle of pills in the console.  White claims that she requested Jackson remove $1,600 from the vehicle so she and Robertson could post bond.  Jackson returned to the vehicle and searched for the money, but claims that he did not find it.  Both officers state that no money was ever recovered from the vehicle.  Plaintiffs allege that Jackson stole the cash during his search.

Subsequent to their arrest, Plaintiffs were jailed without bail for two days.  After discovering that Robertson had prescriptions for the pills and was lawfully in possession of the firearms, the

Union Parish District Attorney's Office declined to charge Plaintiffs with a felony offense.  [Doc. No. 2, p. 3].  Robertson was charged with Reckless Operation of a Vehicle, Disturbing the Peace, and Threatening a Public Official.  White was charged with Resisting an Officer and Disturbing the Peace.  The District Attorney, however, dismissed all charges following five court appearances by Plaintiffs over nine months.

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact.  *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.  *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial.  *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994).  The nonmoving party must show more than "some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor.  *Anderson*, 477 U.S. at 255.

3

### III.    LAW & ANALYSIS

Plaintiffs allege the following claims against Jackson pursuant to Louisiana state law: wrongful arrest, false imprisonment, malicious prosecution, defamation, battery, and theft.  Plaintiffs allege the following claims against Jackson under 42 U.S.C. § 1983: deprivation of constitutional rights, use of excessive force, abuse of power, commission of crime acting under color of law, performing an illegal and warrantless search of private property, and unlawful arrest and seizure of person.  Plaintiffs also allege claims against the Town of Farmerville under § 1983 for an unlawful search policy, failure to train, and negligent hiring.

Defendants argue the Court should grant summary judgment on each of these claims because Jackson had probable cause to arrest Plaintiffs.  Regarding the excessive force claim, Defendants argue that Robertson did not suffer sufficient injury.  Defendants also argue any claims against Jackson should be dismissed because he has qualified immunity.  Regarding the theft claim Defendants argue intentional theft does not violate a constitutional right under § 1983.  Finally, Defendants argue all claims against Farmerville should be dismissed because Plaintiffs have not offered evidence sufficient to demonstrate an unconstitutional policy or custom.

#### A.    Probable Cause

Defendants argue that "the existence of probable cause to arrest precludes all of these claims."  [Doc. No. 14, p. 6].  Since there was probable cause to believe Robertson violated Louisiana's Reckless Operation of Vehicle and Careless Operation statutes, Defendants argue the arrests were clearly permissible.  Defendants also claim that an arrest "even on a minor traffic violation justifies the search of the vehicle, including the passenger compartment and closed containers . . . ."  [Doc. No. 14, p. 8].  Therefore, there could be no unlawful search or seizure.

### 1.    Unlawful Arrest

Defendants argue that they may not be held liable for unlawful arrest or imprisonment because Jackson had probable cause to arrest Robertson and White.  Plaintiffs argue that "neither Robertson nor White were convicted of a crime, and thus their arrest was wrongful."  [Doc. No. 25-1, p. 14].  Nonetheless, Plaintiffs concede that if the arrests were based on probable cause, then Jackson may claim qualified immunity.

A warrantless arrest must be based on probable cause.  *United States v. Wadley*, 59 F.3d 510, 512 (5th Cir. 1995).  Probable cause exists when "the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense."  *Id*.

The Court finds that Plaintiffs have raised a material issue of fact for trial as to whether Jackson had probable cause to arrest Plaintiffs.  In their depositions, Plaintiffs claim that Robertson maintained his position within the right-hand lane, applied his brakes to stop at a red light, exited his vehicle once Jackson stopped him, and requested that Jackson call another officer to conduct the stop because Jackson had repeatedly stopped Robertson without explanation.  In disputing these facts, Defendants offer the deposition of Jackson, which generally states that Robertson crossed the center line, slammed on his brakes, and angrily confronted Jackson.  Viewing this evidence in the light most favorable to Plaintiffs, Defendants have not demonstrated the absence of a material issue of fact as to whether Jackson had probable cause to arrest Plaintiffs.  Therefore, Defendants' Motion for Summary Judgment as to Plaintiffs' unlawful arrest claim is DENIED.

### 2.     Unlawful Search and Seizure

As the Supreme Court has noted, "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment–subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967).  In *Chimel v. United States*, the Supreme Court established an exception to the warrant requirement for searches incident to a lawful arrest.  395 U.S. 752 (1969).  Under *Chimel*, an officer may search the person being arrested for weapons or evidence as well as the area "within [the arrestee's] immediate control."  395 U.S. at 763.  The Court recognized this exception to the general warrant requirement to protect the safety of police officers and avoid destruction of evidence.

The Supreme Court extended *Chimel*'s warrant exception to the automobile context in *New York v. Belton*.  453 U.S. 454, 458 (1981).  There, the Court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile."  *Id*. at 450.  The Court, however, also emphasized that its holding did "no more than determine the meaning of *Chimel*'s principles in this particular and problematic context."  *Id*. at 460.

Following *Belton*, courts' decisions concerning automobile searches incident to arrest varied wildly.  *Arizona v. Gant*, 556 S. Ct. 1710, 1718-19 (2009).  Many courts interpreted *Belton* as authorizing an automobile search incident to every arrest, regardless of whether the arrestee was still near the vehicle or there was potentially evidence inside.  *Id*. (citing *United States v. Hrasky*, 453 F.3d 1099, 1102 (8th Cir. 2006)); see also *Louisiana v. McGraw*, p. 14 (La. App. 2 Cir. 12/10/08); 1 So.3d 645 ("When a lawful arrest is made of the occupant of a vehicle, or of a recent occupant,

then law enforcement automatically has the right to search the entirety of the passenger compartment . . . ."). Other courts, including the Fifth Circuit, viewed *Belton* more narrowly, requiring the search to be conducted before the arrestee was physically restrained. *United States v. Green*, 324 F.3d 375, 379 (5th Cir. 2003).

In *United States v. Green*, two police officers pulled into the arrestee's driveway shortly after the arrestee arrived for the purpose of serving an arrest warrant for a parole violation. *Id*. at 378. The arrestee exited his car and tried to escape. *Id*. Once the arrestee was subdued, a police officer searched his car, finding a .357 caliber revolver beneath the driver's seat. *Id*. Considering the arrestee's Fourth Amendment claims, the Fifth Circuit ruled that once the police subdued the arrestee, the justifications underlying *Belton*'s exceptions to the warrant requirement were no longer applicable. *Id.* at 379. Therefore, the warrantless search of the arrestee's automobile violated the arrestee's Fourth Amendment rights. *Id*.

The Supreme Court clarified the meaning of *Belton* in *Arizona v. Gant*. 129 S. Ct. 1710 (2009). There, the Court announced a bright-line rule governing warrantless searches incident to arrest in the automobile context.

> [We] hold that the *Chimel* rationale authorizes police to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search. Although it does not follow from *Chimel*, we also conclude that circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle."

*Id*. at 1719 (quoting *Thornton v. United States*, 541 U.S. 615, 632 (2004)).

The Court finds that probable cause as to the traffic violation did not authorize Jackson and Holly to search Plaintiffs' vehicle. Viewing the evidence in the light most favorable to Plaintiffs,

7

Robertson and White were arrested for a minor traffic violation.  Since there could be no evidence related to a minor traffic violation inside the vehicle, the search was unconstitutional once Plaintiffs were handcuffed and placed in the police cars.  Therefore, Defendants' Motion for Summary Judgment on the basis of probable cause is DENIED.

### B.    Excessive Force

Defendants argue the Court should grant summary judgment on Plaintiffs' excessive force claims because Jackson testified that Robertson merely tripped and did not suffer any injury. Plaintiffs claim that Jackson forcefully pushed Robertson while his hands were cuffed, causing him to fall on his upper body.  Plaintiffs also claim that Jackson repeatedly instructed Robertson to stand up and only helped him back to his feet once Robertson asked Jackson for help.

The Fourth Amendment protects citizens against the use of excessive force.  U.S. CONST. amend. IV.  To prevail on a Fourth Amendment excessive force claim, a plaintiff must establish 1) an injury 2) that resulted directly from the use of force that was excessive to the need and 3) that the force used was objectively unreasonable.  *Ballard v. Burton*, 444 F.3d 391, 402 (5th Cir. 2006). Although a plaintiff does not need to demonstrate a "significant injury," a merely "de minimis injury" does not suffice as an injury warranting constitutional protection under the Fourth Amendment. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999).  The de minimis standard is "evaluated in the context in which the force was deployed."  *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001).

The Fifth Circuit has issued numerous decisions that provide guidance in determining whether a plaintiff's injuries were merely de minimis.  In *Siglar v. Hightower*, the Court ruled that a bruised ear that resulted from an officer twisting the plaintiff's ear was de minimis.  112 F.3d 191, 194 (5th

Cir. 1997).  There, the Court emphasized the lack of lasting injury to the plaintiff and that the plaintiff was never treated for a physical injury.  *Id.* at 193.  Similarly, in *Freeman v. Gore*, the plaintiff alleged that police officers twisted her arms behind her back and "jerked her all over the carport," which caused bruises and marks on her arms.  483 F.3d 404, 417 (5th Cir. 2007).  The Court ruled that this merely constituted de minimis injuries.  *Id.*

The Court, however, frequently finds that even minor, physical injuries rise above the de minimis level when their infliction was clearly unnecessary.  In *Schmidt v. Gray,* the Court upheld a district court's finding of excessive force where an officer bruised an arrestee's fingers by shutting them in a trunk.  399 Fed. Appx. 925, 928 (5th Cir. 2010).  There, the Court emphasized the arrestee was not resisting arrest and such force was not used for any legitimate law enforcement purpose.  In *Gomez v. Chandler*, the Court ruled that scrapes and bruises to a prisoner's head and body were sufficient injuries where prison guards continued to strike the prisoner after he stopped resisting.  163 F.3d 921, 924 (5th Cir. 1999).

The Court finds that Robertson has not alleged sufficient injuries to state a claim for excessive force.  Here, Robertson has stated that he was cooperating with the arrest, and Jackson shoved him until he fell from a standing position onto his face.  Although such force appears unnecessary in the circumstances, Robertson has not alleged any injuries.  In his Petition, Robertson requests recovery for "past, present, and future pain and suffering, in an amount to be proven at trial," but does not explain the basis for his requested recovery.  [Doc. No. 1-2, p. 5].  In his Opposition to Motion for Summary Judgment, Robertson states that the shove resulted in him striking his face against the ground, but did not allege any specific, physical injury, such as a bruise.  Therefore, Defendants' Motion for Summary Judgment as to Robertson's § 1983 excessive force claim is GRANTED.

### C.    Qualified Immunity

Defendants argue that even if Jackson violated Robertson and White's constitutional rights, qualified immunity "precludes plaintiffs' claims in this matter." [Doc. No. 14, p. 9].   Although Defendants appear to request qualified immunity on each of Plaintiff's 14 claims, Defendants only discuss the wrongful arrest, illegal search, and excessive force claims. Defendants argue that qualified immunity should be granted to these claims because the law was not clearly established and because Jackson did not knowingly violate such law.

Under qualified immunity, a state actor will be shielded from personal liability unless the right the actor violated was clearly established at the time of the violation.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  A right is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Keenan v. Tejeda*, 290 F.3d 252, 261 (5th Cir. 2002) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).  This does not, however, require that the "very action in question has previously been held unlawful."  *Warnock v. Pecos Cnty.*, 116 F.3d 776, 782 (5th Cir. 1997) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  Instead, the Court must consider whether the state of the law at the time of the incident gave Jackson fair warning that his actions amounted to constitutional violations.  *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

The Court finds that qualified immunity does not shield Plaintiffs from liability.  The state of the law as to each of these claims was clear at the time of the incident.  Further, the evidence taken in the light most favorable to Plaintiffs demonstrates that Jackson should have known his actions were unlawful.  Regarding Plaintiffs' unlawful arrest claim, the Fourth Amendment has long prohibited warrantless arrests unless the officer had probable cause.  Therefore, the right that Jackson allegedly violated was clearly established.  Further, viewing the evidence in the light most favorable to

10

Plaintiffs, a reasonable officer in Jackson's situation would have known that he was arresting Plaintiffs without probable cause.

Concerning searches incident to an arrest, the Supreme Court announced its bright-line test in *Gant* roughly eight months prior to this warrantless search.  556 U.S. 332 (2009).  Additionally, the Fifth Circuit addressed these sorts of warrantless searches in *Green* over six years prior to this search.  324 F.3d 375, 378-79 (2003) ("[A]t the time of the search, [the arrestee] was 'pretty secure' and  . . . [the officers] did not fear that their life or safety was in danger.  Because none of the concerns articulated in *Chimel* and *Belton* regarding law enforcement safety and the destruction of evidence are present in this case, the Government cannot justify the search . . . .").  Here, a reasonable officer would have known that arresting Robertson and White for a minor traffic violation did not provide a basis for a warrantless search.

The Court not need address Plaintiffs' qualified immunity defense with regards to the excessive force claim because this claim has been dismissed on other grounds.

Therefore, Defendants' Motion for Summary Judgment on the basis of qualified immunity is DENIED.

### D.    Theft Claims

Plaintiffs allege that Jackson stole $1,600 from Robertson's vehicle during the search. Defendants argue that Plaintiffs' theft claims should be dismissed because Plaintiffs "fail to state a constitutional violation, much less a violation of clearly established law."  [Doc. No. 14, p. 11].  In support, Defendants argues that "[u]nauthorized, intentional deprivations of property by a state actor do not violate the Constitution."  [Doc. No. 14, p. 11].  Defendants cite *Hudson v. Palmer*. 468 U.S. 517 (1984).  In *Hudson*, the Court held

> an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available. For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy.

*Id*. at 533.  Plaintiffs do not respond to this defense in their Opposition to Motion for Summary Judgment.

Consistent with *Hudson*, the Fifth Circuit has ruled that plaintiffs seeking to redress intentional deprivations of property by state actors must assert such claims as state law tort claims. *Marshall v. Norwood*, 741 F.2d 761, 764 (5th Cir. 1984).  Here, Plaintiffs assert their theft claim under Louisiana state law.  Therefore, Plaintiffs need not demonstrate a constitutional violation. Further, the illegality of intentional theft is clearly established.  *See* La. Rev. Stat. Ann. § 2315 (2011) ("Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.").

Therefore, Defendants' Motion for Summary Judgment is GRANTED to the extent that Plaintiffs' petition can be read to assert a theft claim under § 1983.  Defendants' Motion for Summary Judgment on Plaintiffs' state law theft claim is DENIED.

### E.     Town of Farmerville

The Town of Farmerville argues that Robertson's claims based on the police department's search policy, failure to train, and negligent hiring should be dismissed because "[t]here is no evidence to establish an unconstitutional custom or policy on behalf of the Town of Farmerville." [Doc. No. 14, p. 12].

As the Supreme Court has ruled, "a local government may not be sued under § 1983 for an

injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

### 1.   Search Policy

Plaintiffs argue that "[i]t is clear from the depositions that Farmerville had a policy to allow a search of a vehicle any time an arrest was made in total disregard to the Constitutionality of the search."  In support, Plaintiffs emphasize Holly's statements that "[i]f we arrest them, we're going to search the immediate area," and "[i]f we see it need to be done, we do it."  [Doc. No. 25-1, p. 18].  Plaintiffs also note inconsistencies in Jackson's deposition concerning his typical search procedures as well as his statement that the search policy of the police department is to leave the decision to the individual officer.

Defendants argue that Plaintiffs misconstrue the officers' statements.  Further, Defendants argue that providing an officer with discretion to conduct a search is both necessary and constitutional.

The Court finds that Plaintiffs have raised a material issue of fact for trial on the unlawful search policy claim.  Holly and Jackson made several statements in their depositions that could reasonably indicate the police department searched vehicles after every arrest, which would violate *Gant*.  Therefore, Defendants' Motion for Summary Judgment as to the search policy claim is DENIED.

### 2.    Failure to Train

Defendants argue that Plaintiffs' failure to train claim should be dismissed because Plaintiffs have not demonstrated deliberate indifference.  Plaintiffs argue that numerous statements by Jackson and Holly in their depositions indicate the police department abdicated its duty to train its officers in how to conduct a legal search.

A plaintiff may assert a failure to train claim against a municipality under § 1983.  *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011).  A plaintiff, however, must demonstrate that a municipality's failure to train its employees amounts to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Id*.

> "[D]eliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. The city's policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate the Constitution.

*Id*. at 1360 (quotations and citations omitted).

In the Fifth Circuit, "[p]roof of more than a single instance of lack of supervision causing a violation of constitutional rights is required before such lack of training can constitute deliberate indifference." *Lewis v. Pugh*, 289 F. App'x 767, 772 (5th Cir. 2008) (citing *Thompson v. Upshur Cnty.*, 245 F.3d 447, 458 (5th Cir. 2001)).  Such a pattern demonstrates that the municipality should have known of the violations and therefore indicates deliberate indifference.  *Connick*, 131 S. Ct. at 1360.

The Court finds that Plaintiffs have offered evidence sufficient to raise a material issue of fact

as to whether there has been a pattern of violations.  Specifically, Holly stated in his deposition that Farmerville police officers search the entire front side of a vehicle every time they arrest someone who is in a vehicle.  Additionally, when asked whether he conducts a search of the vehicle every time he arrests someone from a vehicle, Jackson responded, "Normally, yes." [Doc. No. 25-3, p. 70].  When asked whether there are some instances when he does not search a vehicle incident to an arrest, Jackson said, "I couldn't tell you, I mean, I don't know.  I don't know what you're asking me." [Doc. No 25-3, p. 70].

Viewed in the light most favorable to Plaintiffs, Holly's testimony indicates that Farmerville police officers conduct impermissible searches on a frequent basis.  Although Jackson's testimony relates only to his individual searches, these statements also provide evidence of Farmerville's deliberate indifference.  Therefore, Plaintiffs have created a material issue of fact as to whether Farmerville acted with deliberate indifference.  Since Defendants only requested summary judgment on this basis, the Court need not address the remaining requirements of a failure to train claim under § 1983.  Plaintiffs' Motion for Summary Judgment as to the failure to train claim is DENIED.

### 3.    Negligent Hiring

Plaintiffs assert a cause of action under § 1983 against the Town of Farmerville for negligent hiring.  As the Supreme Court has made clear, actions under § 1983 must be based on constitutional violations, not mere negligence.  *Daniels v. Williams*, 474 U.S. 327, 332-33 (1986); s*ee also Miller v. Harris Cnty*., 2011 U.S. Dist. LEXIS 107980, at *8 (S.D. Tex. 2011) ("By claiming that movants were negligent in the hiring, training, and supervision of employees, plaintiff fails to assert an issue of constitutional or federal dimension necessary to raise a section 1983 claim.").

Defendants have not raised this argument in their Motion for Summary Judgment.  Therefore,

the Court gives notice of its intent to *sua sponte* grant summary judgment in favor of Defendants as to the negligent hiring claim.  If Plaintiffs oppose the Courts intended disposition of this claim, they shall file a memorandum in opposition within fourteen (14) days of this Ruling and Judgment. Plaintiffs' memorandum shall not exceed ten (10) pages.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [Doc. No. 14] is GRANTED as to the excessive force claim, and this claim is DISMISSED WITH PREJUDICE. Defendants' Motion for Summary Judgment on Plaintiffs' theft claim under § 1983 is also GRANTED, and this claim is DISMISSED WITH PREJUDICE.  The Court gives notice of its intent to *sua sponte* grant summary judgment as to the § 1983 negligent hiring claim.  The motion is otherwise DENIED, and Plaintiffs' other claims, including their state law theft claim, remain pending for trial.

MONROE, LOUISIANA, this 16TH day of November, 2011.

_____
**ROBERT G. JAMES**
**UNITED STATES DISTRICT JUDGE**

16